# FRIER LEVITT

ATTORNEYS AT LAW

Jonathan E. Levitt, Esq.
Attorney ID No. 209217
Nicole M. DeWitt, Esq.
(to be admitted *pro hac vice*)
84 Bloomfield Avenue
Pine Brook, NJ 07058
(973) 618-1660
Attorneys for Plaintiff, *Goldwater Institute*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GOLDWATER INSTITUTE, | No. |
| Plaintiff, | |
| v. | **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, | |
| Defendant. | |

1.      This is an action under the Freedom of Information Act, 5 U.S.C. § 552, ("FOIA") for injunctive and other appropriate relief and seeking the disclosure of agency records improperly withheld from Plaintiff Goldwater Institute ("Goldwater Institute") by Defendant United States Health and Human Services ("HHS") and its component United States Food and Drug Administration ("FDA") (collectively, "Defendant").

## Jurisdiction and Venue

2.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

3.      Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

**Parties**

4.      Plaintiff Goldwater Institute is a public interest non-profit research and policy organization with its principal place of business located in Phoenix, Arizona. It was established in 1988 to focus public attention on matters of public policy and constitutional governance. Among other issues, the Goldwater Institute has advocated for open and transparent government, and has provided extensive research and analysis on the drug approval process in the United States. The Goldwater Institute is also a major advocate of "Right-To-Try" laws, in which terminal patients, in exercising their basic freedom to preserve one's own life, can immediately access investigational drugs which have passed basic safety tests, provided there is a doctor's recommendation, informed consent, and the willingness of the manufacturer of the medication to make such drugs available.[1]   The Goldwater Institute regularly informs the public on matters of broad public concern, including the drug approval process in the United States, through speaking engagements, publishing reports, publishing opinion pieces, and communicating with and being cited in television, Internet, radio, and print media.

5.      Defendant HHS is an agency of the Executive Branch of the United States Government within the meaning of 5 U.S.C. § 552(f)(1), and includes component entity FDA.

6.      Defendant has possession and control over the records Plaintiff seeks under the FOIA.

---

[1] *See, e.g.,* Christina Corieri, *Everyone Deserve the Right to Try: Empowering the Terminally Ill to Take Control of their Treatment,* GOLDWATER INSTITUTE, February 11, 2014, *available at* https://goldwaterinstitute.org/wp-content/uploads/cms_page_media/2015/1/29/Right%20To%20Try.pdf (last visited on August 4, 2020).

## Facts Common to All Counts

I.   *Background of the FDA's Expanded Access ("EA" Program and FDA's Delays to EA Submission Approval*

7.     The FDA regulates the development and approval for marketing of medical products in the United States of America ("US") under authority from the Federal Food, Drug, and Cosmetic Act ("FFDCA").

8.     While approval for a drug is pending with the FDA, a patient may have access to investigational products through either a clinical trial or, when a clinical trial is not an option for a patient, through the FDA's Expanded Access program ("EA Program"), also referred to as the "compassionate use" program.

9.     Under the FFDCA, the EA Program provides a pathway for patients, acting through their physician, to obtain investigational new drugs, biologics, or devices that would otherwise be unavailable outside of a clinical trial setting to address a serious condition or disease for which there are no satisfactory alternatives. *See* 21 U.S. Code § 360bbb.

10.     Expanded access to drugs and biologics is authorized through the submission of a new protocol to either an existing or new investigational new drug application("IND"). This can be for (1) a single patient, (2) an intermediate size patient population, or (3) a larger treatment population.

11.     Absent an emergency that requires treatment before a written submission can be made to FDA, applications for participation in the EA Program submitted by a sponsoring physician must be approved by the FDA before a patient receives a drug or biologic.

12.     The FDA tracks approval of applications for drugs and biologics submitted to the FDA's Center for Drug Evaluation and Research ("CDER") and Center for Biologic Evaluation and

Research ("CBER") respectively, whether via an individual IND, intermediate size IND, or large treatment population IND, and the approval rate for these submissions annually.[2]

13. In review of a pending EA submission, the FDA reports that it must determine the following:

- The patient (or patients) to be treated has a serious or life-threatening disease or condition.
- There is no comparable or satisfactory therapy to diagnose, monitor, or treat the disease or condition.
- The patient cannot get the medical product under another investigational medical product study or protocol.
- The possible benefits to the patient justify the possible risks of the treatment, and those possible risks are not unreasonable given the disease or condition to be treated.
- Providing the investigational medical product will not interfere with the clinical investigations that could support marketing approval of the expanded access use or otherwise compromise the potential development of the expanded access product.
- FDA will determine whether the expanded access request may proceed. If the investigational medical product treatment is not allowed to proceed, FDA will inform the licensed physician or the company (whoever submitted the request) of this decision. FDA will communicate what issues need to be resolved in order for treatment to move forward.[3]

14. The EA Program is a critical route to access investigational therapies when other alternatives have been exhausted. Patients with applications pending with the FDA under the compassionate use program have limited time and options before potentially suffering serious bodily injury or even death.

15. During review by the FDA, unnecessary delays of weeks or months, have very real impacts, and sometimes even result in death for patients who have no other treatment alternatives and whose EA submissions are pending approval.[4]

---

[2] *See, e.g., Expanded Access (Compassionate Use) Submission Data CDER, CBER and CDRH Expanded Access INDs and Protocols (2015-2019)*, U.S. FOOD & DRUG ADMINISTRATION, *available at* https://www.fda.gov/news-events/expanded-access/expanded-access-compassionate-use-submission-data (last visited on August 4, 2020).

[3] *Expanded Access Information for Patients*, U.S. FOOD & DRUG ADMINISTRATION, *available at* https://www.fda.gov/news-events/expanded-access/expanded-access-information-patients#fda-consider (last visited on August 4, 2020).

[4] *See, e.g.,* Christina Corieri, *Everyone Deserve the Right to Try: Empowering the Terminally Ill to Take Control of their Treatment*, GOLDWATER INSTITUTE, February 11, 2014, *available at* https://goldwaterinstitute.org/wp-

16.     While EA submissions undergo under a lengthy time period for approval, the FDA, stands between the patients and the treatments that may alleviate their symptoms or provide a cure. To access these treatments, patients must either go through a lengthy FDA exemption process or wait for the treatments to receive FDA approval, which can take a decade or more and cost hundreds of millions of dollars. Sadly, over half a million cancer patients and thousands of patients with other terminal illnesses die each year as the bureaucratic wheels at the FDA slowly turn.[5]

17.     To make matters worse, to most patients, and many physicians outside of major institutions, the process of obtaining expanded access is excessively time-consuming and extremely difficult to navigate.[6]

II.     *Goldwater Institute Files a Freedom of Information Act ("FOIA") Request to the FDA to Examine the FDA's Review of EA Submissions from Major Institutions, and the FDA Subsequently Ignores Goldwater Institute's Offers to Narrow the Scope of the FOIA Request and Constructively Denies the FOIA Request by Failing to Respond for Over Three (3) Years*

18.     On February 8, 2016, the Goldwater Institute submitted a FOIA request ("FOIA Request"), including a request for the waiver of all fees pursuant to 5 U.S.C. § 522(a)(4)(A)(iii), to the FDA.  A copy of the FOIA Request is attached as **Exhibit A** and is expressly incorporated herein.

19.     In the FOIA Request, the Goldwater Institute requested "[c]opies of all expanded access submissions and protocols that were allowed to proceed by the following list of requesting organizations, institutions, investigators, or treating physicians at those organizations and institutions, including all single patient protocols, single patient emergency protocols, and intermediate size

---

content/uploads/cms_page_media/2015/1/29/Right%20To%20Try.pdf (last visited on August 4, 2020) at 1 (discussing one example of a cancer patient who died on the day her Expanded Access submission was approved).
[5] *Id.*
[6] *See*, *e.g.*, Christina Corieri, *Everyone Deserve the Right to Try: Empowering the Terminally Ill to Take Control of their Treatment*, GOLDWATER INSTITUTE, February 11, 2014, *available at* https://goldwaterinstitute.org/wp-content/uploads/cms_page_media/2015/1/29/Right%20To%20Try.pdf (last visited on August 4, 2020) at 1, 10-14.

protocols for F12, FY13, FY14 and FY 15" for a specified list of medical facilities. See **Exhibit A** at 1.

20.     Defendant never responded to Goldwater Institute's request for waiver of fees.

21.     Despite numerous requests by Plaintiff for an estimated timeframe of completion, in which Goldwater Institute was given varied responses, no substantive response was given to the Goldwater Institute's FOIA Request by Defendant.

22.     On or about June 22, 2016, approximately four months after receipt of the Request by the FDA, the Goldwater Institute was advised that the Request was number 40 in queue, which purportedly would require an additional 6 – 8 months before the Request would be processed.

23.     After no response was given to the FOIA Request for nearly 20 months, on February 28, 2018, the Goldwater Institute offered to narrow the scope of the FOIA Request to just one year of data, from 2015 for approved emergency applications, if the response could be provided within 30 days, with the remaining documents to be furnished thereafter.

24.     Defendant never responded to Goldwater Institute's offer to narrow the scope of the request.

25.     On or about March 13, 2018, the Goldwater Institute inquired about the status of the FOIA Request again via e-mail and was advised that the request was currently 184 out of 578 of the CDER's queue and would require an additional 18 – 24 months to process.

26.     On or about March 14, 2018, the Goldwater Institute made another inquiry via e-mail to Mr. Landy, Regulatory Counsel at the FDA, seeking confirmation that this was the agency's final position regarding the Request and stating that "[i]f you are able to provide the records in a more timely manner, we are available to discuss."

*27.*     The FDA never responded to this e-mail or otherwise provided a response to the FOIA Request.

III.     *Goldwater Institute Submits an Administrative Appeal for the FDA's Constructive Denial of the FOIA Request, which is Remanded Back to the FDA for Completion Six (6) Months Later*

28.     On or about October 30, 2019, approximately eighteen months after the last correspondence from Defendant, and well over three years after the Goldwater Institute's initial FOIA request, the Goldwater Institute submitted a FOIA appeal, for the FDA's failure to make a determination on the Goldwater Institute's FOIA request, that was submitted on February 8, 2016 ("Constructive Denial Appeal"). A copy of the Constructive Denial Appeal is attached as **Exhibit B** and expressly incorporated herein.

29.     In the Constructive Denial Appeal, the Goldwater Institute appealed the agency's failure to properly process the Request in accordance with its duties under applicable statutes and regulations by highlighting the FDA's failure to communicate the scope of the documents it intends to produce or withhold or otherwise respond to Goldwater Institute's offer to modify the scope of the request. See **Exhibit B** at 4.

30.     On or about November 5, 2019, Defendant acknowledged receipt of the administrative appeal ("Appeal Acknowledgement Letter"). A copy of the Appeal Acknowledgement Letter is attached as **Exhibit C**.

31.     In the months that followed, Plaintiff sent numerous requests for information on the status of the Constructive Denial Appeal without any substantive response.

32.     On April 15, 2020, more than two (2) years after the FDA's estimate that $18 - 24$ months would be required to process the records request, the Goldwater Institute received a response to the Constructive Denial Appeal from the Defendant remanding the Request back to the FDA for completion ("Appeal Response"). A copy of the Appeal Response is attached as **Exhibit D**.

33.     The Appeal Response stated that "[b]ecause the actions necessary to complete your request are yet to be accomplished, I am remanding this request back to the FDA for completion." See **Exhibit D** at 1.

34.     The Appeal Response did not provide any information about the scope of the documents the FDA intends to produce or withhold or otherwise responds to the Goldwater Institute's offer to modify the scope of the request.

35.     The Appeal Response instead provided that the "FDA has placed your request in the complex processing queue and estimates that your request will be completed by November of 2020." Id.

36.     This new estimate was seven (7) months later than the estimate given by Defendant in February 2018, in which Defendant estimated an additional 18 – 24 months for the completion of the Request.

37.     The delays by Defendant were not reasonably related to the processing of the FOIA Request, as virtually no information whatsoever was given to the Goldwater Institute from Defendant, including but not limited to the total number of responsive records, the costs associated with pulling documents, Defendant's decision on the fee waiver request or the ability of Defendant to process the request in a modified timeframe in response to Plaintiff's offer to limit the scope of the FOIA Request.

38.     In fact, Defendant repeatedly ignored such offers to discuss the scope of the FOIA Request or to work with the Goldwater Institute to process the FOIA Request.

39.     Moreover, upon information and belief, the records requested from Defendant are readily available and searchable based on provider. Indeed, the FDA regularly reports on the approval percentages for the number of expanded access INDs and protocols submitted for each year.[7]

IV.     *Goldwater Institute Submits a Request for Expedited Processing of the FOIA Request Due to the Critical Importance of Patient Access to Unapproved Therapies to Fight COVID-19 Through the EA Program Which Was Promptly Denied by the FDA*

40.     In the months before and after the Appeal Response, the initial onset and subsequent exponential growth of COVID-19 within the United States took place, necessitating coordinated action between the states and the federal government and corresponding agencies tasked with responding to the pandemic.

41.     The FDA, in conjunction with other federal agencies such as the Centers for Disease Control ("CDC") and the National Institutes of Health ("NIH"), are tasked with combatting the COVID-19 pandemic as the COVID-19 pandemic continues to take the lives of thousands of Americans every day.

42.     The FDA, among numerous other critical responsibilities, reviews expanded access applications to allow COVID-19 patients access to potentially life-saving drugs and therapies through, in part, the Expanded Access program.

43.     On or about April 3, 2020, the FDA announced a national effort to accelerate the development of, and access to, two investigational therapies, convalescent plasma and hyperimmune globulin, derived from human blood from individuals who have recovered from the virus.[8] In this

---

[7] *See, e.g., Expanded Access (Compassionate Use) Submission Data Archive FY 14 – 18,* U.S. FOOD & DRUG ADMINISTRATION, *available at* https://www.fda.gov/news-events/expanded-access/expanded-access-compassionate-use-submission-data-archive-fy-14-18#EAP (last visited on July 28, 2020).

[8] *FDA News Release: Coronavirus (COVID-19) Update: FDA Coordinates National Effort to Develop Blood-Related Therapies for COVID-19,* U.S. FOOD & DRUG ADMINISTRATION, https://www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-fda-coordinates-national-effort-develop-blood-related-therapies-covid-19 (last visited on April 23, 2020).

press release, the FDA acknowledged the importance of the expanded access program to evaluate the efficacy of plasma therapies.

44.     On or about April 13, 2020, the FDA published *Investigational COVID-19 Convalescent Plasma; Guidance for Industry* to provide nonbinding recommendations to health care providers and investigators on the administration and study of investigational convalescent plasma collected from individuals who have recovered from COVID-19.[9] Therein, the FDA provides that  for "patients with serious or immediately life-threatening COVID-19 who are not eligible for or who are unable to participate in randomized clinical trials, access to this investigational product may be available through participation of acute care facilities in an investigational expanded access protocol under an IND that is already in place."[10]

45.     As additional unapproved therapies become available, more potential options are available for patients through the FDA's Expanded Access Program to combat COVID-19. By way of example and not limitation, the FDA has allowed for the study of Remdesivir through clinical trials and under a multi-patient expanded access program coordinated by Gilead.[11]

46.     Transparency in the operations of the FDA and its expanded access drug approval process is critical now more than ever before. Whether an unapproved therapeutic is made available to a patient with an immediately life-threatening disease or condition under close physician supervision in a hospital setting via an Emergency Use Authorization ("EUA") or outside a hospital setting through a physician prescription under an Expanded Access Investigational New Drug ("IND") protocol, the public has a right to know how access is granted to these drugs by the FDA.

---

[9] *Investigational COVID-19 Convalescent Plasma Guidance for Industry,* U.S. FOOD & DRUG ADMINISTRATION, *available at* https://www.fda.gov/media/136798/download (last visited on April 23, 2020).
[10] *Id.* at 3.
[11] *See Coronavirus (COVID-19) Update: FDA Issues Emergency Use Authorization for Potential COVID-19 Treatment*, U.S. FOOD & DRUG ADMINISTRATION, *available at* https://www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-fda-issues-emergency-use-authorization-potential-covid-19-treatment (last visited on May 6, 2020).

47.     This need for information about the operations of the FDA is even more evident when considering the fact that, as of April 22, 2020, more than 800,000 cases of COVID-19 had been reported in the United States, with 44,575 deaths.[12] These numbers have increased substantially since that date.

48.     Accordingly, on or about May 8, 2020, the Goldwater Institute submitted a request for expedited processing of FDA FOIA Request No. 2016-1341, which sought copies of all expanded access submissions and protocols that were allowed to proceed from ten (10) specified organizations and institutions, including those from providers rendering medical services or investigators as defined in 21 C.F.R. § 56.102(h), as well as all single patient protocols, single patient emergency protocols, and intermediate size protocols from these approved expanded access submissions. ("Request for Expedited Processing"). A copy of the Request for Expedited Processing is attached as **Exhibit E** and is expressly incorporated herein.

49.     In the Request for Expedited Processing, Plaintiff demonstrated a compelling need for expedited processing of the FOIA Request by showing both that (1) that the requester is a "person primarily engaged in disseminating information" and that an "urgency to inform the public concerning actual or alleged Federal Government activity" exists; or (2) "that a failure to obtain requested records on an expedited basis … could reasonably be expected to pose an imminent threat to the life or physical safety of an individual." See **Exhibit E** at 4 - 7 (citing 5 U.S.C. § 552(A)(6)(E)(v) and 5 U.S.C. § 552(A)(6)(E)(i)).

50.     On May 18, 2020, the FDA denied the Goldwater Institute's Request for Expedited Processing. ("FDA Denial"). The FDA Denial simply stated that Goldwater Institute had not "demonstrated a compelling need that involves an imminent threat to the life or physical safety of an

---

[12]     *Coronavirus: What You Need to Know*, NATIONAL GOVERNORS ASSOCIATION, https://www.nga.org/coronavirus/#current (last accessed April 22, 2020).

individual" and "[n]either have you demonstrated that there exists an urgency to inform the public concerning actual or alleged Federal Government activity." A copy of the FDA Denial is attached as **Exhibit F** and is expressly incorporated herein.

V.    *Goldwater Institute Submits an Appeal to the FDA's Denial of the Request for Expedited Processing, and the FDA Responds that It Needs More Time to Reply to the Appeal*

51.    On June 2, 2020, Plaintiff submitted an administrative appeal to the FDA Denial ("Appeal to FDA Denial") seeking expedited processing of the February 8, 2016 FOIA Request pursuant to 5 U.S.C. § 552(a)(4)(E)(iii), such that all responsive records pertaining to the Goldwater Institute's FOIA request dated February 8, 2016 be released as soon as practicable, and requesting a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) and 21 C.F.R. § 20.46. A copy of the Appeal to FDA Denial is attached as **Exhibit G** and is expressly incorporated herein.

52.    Plaintiff further demonstrated its willingness to again narrow the scope of the FOIA Request in the Appeal to FDA Denial and referencing the fact that certainly some responsive documents and information could be produced in short order given the current estimated completion date of November 2020. See **Exhibit G** at 3.

53.    In response to the FDA Denial, Plaintiff further described how there was a compelling need to release responsive documents to the request, necessitating the approval for expedited processing. See **Exhibit G** at 2 - 3.

54.    On June 4, 2020, Defendant acknowledged receipt of the Appeal to FDA Denial, via letter dated June 4, 2020, and stated that the appeal fell under unusual circumstances requiring consultation with another agency that had substantial interest in the determination of the appeal. A copy of the June 4, 2020 acknowledgement letter is attached is **Exhibit H** and is expressly incorporated herein.

55.     Plaintiff has received no other information related to the Appeal to the FDA Denial or otherwise with respect to FOIA Request from Defendant.

56.     In the meantime, the Expanded Access program continues to be a necessary method of obtaining life-saving treatment for COVID-19[13] and other diseases.

57.     The current national count for COVID-19 cases is 4,163,892, of which 145,982 have resulted in death.[14]  This is an over four-fold increase in the number of cases since Plaintiff initially submitted the Request for Expedited Processing. See **Exhibit E** at 3.

58.     Based on the ongoing threat to our nation's public health, COVID-19 news continues to be at the forefront of every American's daily concerns. Throughout the country, news reporting agencies have reported, and continue to report, on the ongoing pandemic and access to life-saving treatment in the expanded access program.[15]

59.     An urgency to inform the public concerning actual or alleged Federal Government activity exists for the processing EA program submissions, which even Defendant, in the May 2018 Expanded Access Program Report, acknowledged "[b]ecause EA operates in an inherently multi-stakeholder environment, the absence of standard processes and policies for EA submission requests to FDA, manufacturers, IRBs, and payers creates confusion for many stakeholders."[16] The FDA also noted that "[s]takeholders reported variability in policies related to requirements for applications submitted to the various parties involved in approval and authorization, in addition to variation in

---

[13] *See, e.g., COVID-19 Expanded Access Program Plasma Donors Needed for Treatment Protocol*, https://www.uscovidplasma.org/ (last accessed July 27, 2020).

[14]     *Coronavirus:   What   You   Need   to   Know*,   NATIONAL   GOVERNORS   ASSOCIATION, https://www.nga.org/coronavirus/#current (last accessed July 27, 2020).

[15] *See, e.g.,* Brit McCandless Farmer, *COVID-19 Plasma Donation: What You Need to Know*, May 31, 2020, CBS NEWS, *available at* https://www.cbsnews.com/news/covid-19-plasma-donation-what-you-need-to-know-60-minutes-2020-05-31/ (last accessed July 28, 2020); *See also* Bill Whitaker, *Inside a Convalescnt Plasma Therapy Program Treating Coronavirus Patients, ,* May 31, 2020, CBS NEWS, *available at* https://www.cbsnews.com/news/coronavirus-antibodies-blood-plasma-therapy-60-minutes-2020-05-31/ (last accessed July 28, 2020).

[16] *Expanded Access Program Report*, May 2018, FDA *available at* https://www.fda.gov/media/119971/download (last accessed July 28, 2020) at 3.

insurance coverage policies. The variation drives administrative burden, creates a degree of stakeholder confusion, and hinders easy program engagement and navigation."[17]

60.      Based on the ongoing failure of Defendant to respond to Plaintiff in a reasonable and timely manner during the past four (4) years, in conjunction with the compelling need for the Goldwater Institute to obtain the records as soon as practicable via expedited processing of the FOIA Request, the Goldwater Institute was left with no choice but to seek judicial relief to compel the production of records responsive to the FOIA Request.

## COUNT I
### Failure to Expedite Plaintiff's Request

61.      Plaintiff repeats and realleges each and every allegation set forth above in Facts Common to All Counts as through set forth at length herein.

62.      Defendant's failure to expedite the processing of Plaintiff's FOIA Request violates FOIA, 5 U.S.C. § 552(a)(6)(E), and Defendant's corresponding regulations.

## COUNT II
### Production Under the FOIA

63.      Plaintiff repeats and realleges each and every allegation set forth above in Facts Common to All Counts and Count I as though set forth at length herein.

64.      Plaintiff properly requested records within Defendant's control and possession in accordance with the FOIA.

---

[17] *Id.*

65.     Plaintiff has a right of access to the requested information under the FOIA, and there is no legal basis for Defendant's denial of such access.

66.     Defendant has wrongfully delayed and withheld the requested records from Plaintiff.

67.     Defendant's delays are not "reasonably necessary to the proper processing of the particular requests." 5 U.S.C. § 552(a)(6)(B)(iii).

68.     Plaintiff exhausted its administrative remedies with regard to the wrongfully withheld records.

69.     Defendant's failure to conduct a reasonable search and to timely make available and to release all the documents requested by Plaintiff violates FOIA, 5 U.S.C. § 552(a)(3), 5 U.S.C. § 552(a)(6), and Defendant's corresponding regulations.

### COUNT III
### Failure to Grant Waiver of Fees

70.     Plaintiff repeats and realleges each and every allegation set forth above in Facts Common to All Counts, Count I and Count II, as if set forth more fully herein.

71.     Defendant's failure to grant Plaintiff's waiver of fees violates FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), and Defendant's corresponding regulations.

### COUNT IV
### Failure to Grant Limitation of Fees

72.     Plaintiff repeats and realleges each and every allegation set forth above in Facts Common to All Counts, Count I, Count II, and Count III as if set forth more fully herein.

73.    Defendant's failure to grant Plaintiff's waiver of fees violates FOIA, 5 U.S.C. § 552(a)(4)(A)(ii)(II), and Defendant's corresponding regulations.

## REQUESTED RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court:

a.    Expedite consideration of this Complaint pursuant to 28 U.S.C. § 1657;

b.    Declare that Defendant improperly failed to grant expedited consideration to Plaintiff's FOIA Request and order that Defendant immediately to conduct a complete and thorough search for all responsive records;

c.    Order Defendant immediately and expeditiously to provide Plaintiff copies of the requested records;

d.    Enjoin Defendant from assessing any fees against Plaintiff in relation to the processing of the FOIA Request;

e.    Enjoin Defendant from withholding records and order Defendant to disclose the requested records in their entireties and make copies available to Plaintiff;

f.    Declare that Defendant's failure to disclose the records requested by Plaintiff violates the FOIA;

g.    Enter a finding that personnel employed by Defendant acted arbitrarily and capriciously in withholding public records from Plaintiff as provided in 5 U.S.C. § 552(a)(4)(F);

h.    Award Plaintiff costs and reasonable attorneys' fees in this action, as provided in 5 U.S.C. § 552(a)(4)(E); and

i.    Grant such other and further relief as may deem just and proper.

**RESPECTFULLY SUBMITTED** this 11th day of August 2020 by:

BY:   /s/ Jonathan Levitt
             Jonathan E. Levitt, Esq.
             Attorney ID No. 209217
             Nicole M. DeWitt, Esq.
             (to be admitted *pro hac vice*)
             **FRIER & LEVITT, LLC**
             84 Bloomfield Avenue
             Pine Brook, NJ 07058
             (973) 618-1660
             *Attorneys for Plaintiff, Goldwater Institute*